Putnam J.
delivered the opinion of the Court. If the prior attachment which was made by the defendant upon the writ of Joseph King against Cyrus King, were vacated, the plaintiff’s attachment would be the only one upon the property. Was the prior attachment vacated by the amendment introducing the new counts ?
The declaration in the writ of Joseph King against Cyrus King originally contained two counts ; one for money had and received &c. for $ 10,000, and another for goods sold and delivered, for $ 5000. The new counts filed under the leave to amend, were [as before stated.]
The claim or cause of action for the security of which a *400 creditor obtains his lien by attachment, should be- clearly indicated in the writ-and declaration. The writ should state the amount or value of the property to be attached, and the declaration should set forth clearly the cause or causes of action to be secured by the attachment. And it would be a manifest injustice to a subsequently attaching creditor, to permit the prior attacher to amend by the introduction of claims which were not originally set forth and relied upon in the declaration, for he has a vested interest m the surplus. But amendments which should be made consistently with those causes of action, which were substantially though not technically described, would not affect the rights of the attaching creditors.
If, for example, there were the money counts only in the declaration, which should refer to a bill of particulars annexed,' containing a description of bills of exchange, notes, &c. which would be offered in evidence, it would seem that counts technically describing those bills of exchange &c. and the other causes set forth in the account or bill of particulars annexed, would not be considered as new causes of action, but entirely consistent with the intent of the plaintiff as originally manifested in his writ and declaration. If however such an intent could not be inferred from the writ and declaration in regard to the causes of action to be added, the new counts would be considered as made for other, and not for the original causes set forth.
In Willis v. Crooker, 1 Pick. 204, the original counts were, 1. Upon a note for $ 171-82 ; 2. For $2000 money had and -eceived. The new counts were, 3. For a balance of account, $ 382 ; 4. On a note for $196 ; and 5. On a note for $500 ; and judgment was rendered for $ 1166-91. And there, it was insisted, that the second count would have been sufficient to support the amount of the judgment recovered, and would cover the new counts. But the Court answered, that it could not be inferred from the record that it was intended to cover them. And the attachment was vacated by the amendment.
The rights ot the attaching creditors should be ascertained as they existed and were disclosed by the writ and declaration, *401 a- <he time when they made their attachments. If it were ot srwise, the attachment law might be a most powerful engine of (raud, that would work up the whole of the debtor’s property for the use of the first attacher, who should think proper to enlarge his claims sufficiently to embrace it.
The same principle applies to the liability of bail, where the action and all demands are referred; Hill v. Hunnewell, 1 Pick. 192 ; notwithstanding the bail might gain by the agreement to refer. Bean v. Parker, 17 Mass. R. 603.
It is contended for the defendant, that Joseph King, at the time when he procured the attachment to be made, held in his own possession two notes against Cyrus King, which are described in the first and second new counts, viz. one for $ 3319-94, and the other for $ 2681-47 ; and that these notes could have been given in evidence in support of the money count, which greatly exceeded those sums together, and that the amount of those notes exceeds the value of the property which was attached.
But the original declaration does not show that the then plaintiff, Joseph King, did intend to produce those notes in evidence. It cannot be made apparent from the declaration (as it ought) that Joseph King brought his action upon those notes and attached the property for the security of the payment of those notes.[1]
But there is a more grave answer to the note for $2681-47, and to the claims sought to be recovered in several of the other new counts. It appears from the deposition of Cyrus King, that this note was given for the following receipt: — “ Boston, 25 Feb. 1825. Received of Cyrus King his note of this date for $2681-47, payable on demand, which I promise to account to him for. (Signed) Joseph King.” So that this note was without any consideration. If Joseph should recover it, he was to pay or account to Cyrus for it. Nothing was due from Cyrus to Joseph on that account. And three or four of the other new counts were upon notes or checks, which were made, long after the attachment, payable by *402 Cyrus to Joseph for notes which were originally given to King andDavenport. _ _ •
_ _ Thus it is now proved, that a great part of the sum recovered by Joseph King against Cyrus, in the suit which the plaintiff in this action attempted to defend under the statute provided for that purpose, was not justly due; on the contrary, that the recovery was obtained by the suppression of the receipt given to Cyrus King, which would have defeated the note to which it referred, and by the manufacturing of evidence after the attachment, to make Joseph King appear to be the sole creditor of Cyrus, when in fact the contents of the papers given up were due, if at all, to King and Davenport and not to Joseph King. The business was so effectually covered, that Fairfield, the present plaintiff, was not able, in the defence of the suit in the name of Cyrus King, to tear off the veil. The jury were deceived, and Joseph was enabled to recover against Cyrus a larger amount than the value of the property attached.
But it is urged for the defendant, that he was innocent in all that matter. It may be that he has not intended to do any thing morally wrong ; but he acted with full knowledge of the plaintiff’s claims. On the 27th of July, 1825, the plaintiff informed him, that he should resist the demands upon which the attachments prior to his own were founded, as being fraud7 ulent, and that he should utterly object to the sale of the goods attached, until judgment should be rendered in due course of law. Nevertheless the defendant so far came into the views of Joseph King as, immediately after that notice, to sell the goods and the proceeds have been applied towards the satisfaction of the execution which Joseph recovered in his suit against Cyrus. In short, the defendant has been repeatedly warned from the beginning, that the plaintiff would contest the claims and pretensions of the prior attaching creditors, and that he should conduct himself accordingly. However we may regret that a meritorious officer should suffer from any act not intentionally wrong, yet that consideration is not to prejudice the legal rights of the plaintiff. We hope the defendant has taken an indemnity from the party in whose favor he has acted. But whether he has or not, is a question which is not *403 to influence this decision. He must stand or fall, according to the rights of the party to whom he has lent his aid.
It is insisted that the attachment should not be vacated in the whole, but that it should be sustained so far at least as to cover the amount due,on the note for $3319'94 ; which would be sufficient nearly of quite to cover the property. Without again stating the reasons why that note, if honestly due, could not be legally added to the original declaration in virtue of the leave to amend, there is another answer which we think would be fatal to that suggestion. The argument amounts to this, that a man having a just claim to a small sum, who should fraudulently bring forward claims to a much larger amount, not due, and who should be detected, should be put in as good a condition, at least, as if he had not mixed the good and the bad together and consolidated the whole into a judgment. We think the law is directly the reverse, and that the fraud corrupts and destroys the whole.
We are all clearly of opinion, that for the reasons before stated, the attachment which was made for Joseph King prior to that which was made for the plaintiff was vacated. We need not consider a great many points which were urged for the defendant, as we have come to this result.
The counsel for the defendant have referred to the case of Rich v. Bell, 16 Mass. R. 294, to show that the plaintiff should recover no more than nominal damages. But in that case the first attaching creditor had an honest judgment, upon which his execution issued; in this case the judgment was fraudulent in respect to the plaintiff. In that case the first attaching creditor preserved his lien ; in this case he lost it.
We think that the defendant is by law accountable to the plaintiff in the same manner as if the attachments on the writs of Joseph King and Elisha King had not been made. The defendant admitted by his return upon the plaintiff’s writ, that the property which he attached was of greater value than the plaintiff’s demand as it was finally liquidated by the judgment, if the prior attachment should be rendered inoperative. That being the case, and the plaintiff’^ judgment and execution being regular, and the defendant having, failed to satisfy the same, and having offered no legal excuse for omitting to do *404 so, the judgment must be for the plaintiff to the amount of his execution, with interest since the same ought to have been levied at his request upon the property originally attached.

Defendant defaulted.

 See Seeley v. Brown, 14 Pick. 177; Wright v. Brownell, 3 Vermont K. 435.